UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AUSTIN C.,

                    Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

CASE NO. 3:25-cv-06059-GJL

SOCIAL SECURITY DISABILITY
APPEAL ORDER

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Magistrate Judge Rule 13. *See also* Consent to Proceed Before a United States Magistrate Judge, Dkt. 2. This matter has been fully briefed. *See* Dkts. 10, 12, 13.

Having considered the Administrative Record (AR) and all memoranda, the Court concludes that the Administrative Law Judge (ALJ) did not err in finding that Plaintiff was not disabled. Accordingly, this matter is **AFFIRMED.**

//

//

//

SOCIAL SECURITY DISABILITY APPEAL ORDER - 1

### I.    PROCEDURAL HISTORY

On March 29, 2021, Plaintiff filed his applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). AR 108–09. His claims were denied initially on November 16, 2021, and upon reconsideration on August 22, 2023. AR 108–09, 129, 133. On November 27, 2024, ALJ Mark Triplett (the ALJ) entered a decision determining that Plaintiff was not disabled. AR 24–38. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on September 24, 2025, making the ALJ's decision the Commissioner's final decision subject to judicial review. AR 1. On December 1, 2025, Plaintiff filed a Complaint with this Court, seeking judicial review of the ALJ's decision. Dkt. 4. Defendant filed the sealed Administrative Record in this matter on January 30, 2026. Dkt. 7.

### II.    BACKGROUND

Plaintiff was born June 28, 1996, and was twenty-three years old on March 5, 2020, his alleged date of disability onset. AR 108. Plaintiff has at least a high school education. AR 36. The ALJ found that Plaintiff suffers from several severe impairments, including obesity, obstructive sleep apnea, tachycardia, cervical strain/sprain, chronic fatigue syndrome, and allergic rhinitis. AR 27. The ALJ, however, found that Plaintiff was not disabled because he had the following RFC through his Date Last Insured (DLI):

> To perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. [Plaintiff] can frequently balance, but occasionally stoop, kneel, crouch, and crawl. He can occasionally reach overhead bilaterally. [Plaintiff] can tolerate occasional exposure to atmospheric conditions as defined in Selected Characteristics of Occupations. [Plaintiff] can tolerate occasional exposure to workplace hazards such as unprotected heights and exposed, moving machinery. [Plaintiff] also requires the ability to alternate between sitting and standing at will while remaining on task.

AR 29.

//

SOCIAL SECURITY DISABILITY APPEAL ORDER - 2

## III.   DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of benefits if the ALJ's findings are based upon legal error or are not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [they] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted).

Plaintiff alleges that the ALJ: (1) erred in considering his subjective symptom testimony, (2) erred in considering certain medical opinion evidence, and (3) that the proper remedy for the ALJ's errors is to remand the case for an award of benefits. Dkt. 10 at 1.

### A.   Subjective Symptom Testimony

Plaintiff argues that the ALJ erred in "his consideration of the impact of Plaintiff's chronic fatigue syndrome on his ability to work on a full-time basis." Dkt. 10 at 2.

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) (citation omitted). The first step requires an ALJ to determine "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (citation omitted). This objective medical evidence does not have to corroborate the severity of the alleged symptoms, rather, "the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms." *Id.*

If a claimant has satisfied the first step, and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.* at 1112 (citation omitted). The specific, clear, and convincing standard, however, is "the most demanding [standard] required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). As with all findings by the ALJ, however, the specific, clear, and convincing reasons for rejecting the claimant's testimony about the severity of their symptoms must also be supported by substantial evidence in the record. 42 U.S.C. § 405(g); *see also Bayliss*, 427 F.3d at 1214 n.1

Plaintiff testified at his hearing that his chronic fatigue syndrome was his most "prominent medical condition[,]" AR 60, and that he did not have:

> much energy, so it's hard to consistently move, especially when you want to do things around the house to, like, cook or other things. So you kind of have to prioritize your energy. It's kind of like having a set amount of cash. You really have to prioritize where you spend it.

AR 64. Plaintiff also testified to injuries suffered in a car accident in June 2020 that exacerbated his underlying injuries and affected his "neck, back, and hips[.]" AR 64–65.

The ALJ found that Plaintiff's impairments could reasonably be expected to cause some degree of the alleged symptoms and that there was no evidence of malingering. AR 30. The ALJ, therefore, was required to provide specific, clear, and convincing reasons for discounting Plaintiff's subjective symptom testimony. *Smith*, 14 F.4th at 1112. The ALJ met this standard by finding that Plaintiff's testimony was undermined by his reported activities of daily living and inconsistencies with his treatment history. AR 30–31. These are valid grounds upon which an

SOCIAL SECURITY DISABILITY APPEAL ORDER - 4

ALJ may discount a claimant's subjective symptom testimony. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (activities of daily living an "important indicator of the intensity and persistence of [a claimant's] symptoms"); *Smartt*, 53 F.4th at 498 (emphasis in original) ("[W]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective symptom testimony, the ALJ may indeed weigh it as undercutting such testimony.").

In support of this conclusion, the ALJ found that Plaintiff "testified at the hearing that he continued to be able to drive a vehicle, took care of his own dishes and laundry," he could "go for short walks to the mailbox daily or every other day and he could do some physical therapy exercises on an average day." AR 30. Plaintiff "stated he sometimes went with his mother to the grocery story . . . helped take care of his mother and was able to build and move a shelf." *Id.* The ALJ then concluded that "these activities demonstrate a greater capacity for activity than alleged by" Plaintiff, and that "inconsistencies such as these undermine the weight that can be given to [Plaintiff]'s symptom reports." *Id.*

Indeed, at his hearing, Plaintiff testified that on an average day he would "try and do some of [his] PT exercises to keep blood flowing[,]" AR 55, and later, that he was doing physical therapy "to try and help [his] hips and [his] shoulder, mostly if I get any exercise it's through that, if I try to, you know, do it every day if I can. But, like, I don't always." AR 63. He also testified that he was able to engage in "routine driving, meaning local short trips maybe to [his] doctor or for personal errands." AR 51. As for household chores, Plaintiff testified that "dishes are pretty much my thing for, you now - -  not perfect how often I'm able to do them, but I do my best to keep up with them to help my mom[,]" and that he was also "able to help out with [laundry], yeah." AR 55.

As the ALJ found, Plaintiff testified that he went on "80 to 90% of most grocery store runs" with his mother and would go into the store "50/50" times, depending on "how much she needs to get, if I can help lighten the load a little bit . . . if I can, if I have the energy." AR 59. When they would go in to stores, Plaintiff and his mother would "split up[,]" Plaintiff would "stick to one corner of the store . . . [a]nd then we'll meet back [up.]" *Id.*

Plaintiff testified that he walks "[t]o the mailbox and back if possible[,] [y]eah, if I have the energy that day, you know, just to get out and have air[,]" and that he would go for try to go for walks "[e]very day, if possible," but "every other day at the worst." AR 62–63. Finally, as the ALJ acknowledged in the decision, medical records from 2023 note that Plaintiff "put together a large bookshelf and carried [it] into the house which aggravated his back." AR 95.

The ALJ reasonably found that this evidence was inconsistent with Plaintiff's allegations of total disability due to his severe impairments, including chronic fatigue syndrome. AR 30. The Court concludes, therefore, that the ALJ offered specific, clear, and convincing reasons, supported by substantial evidence, for finding that Plaintiff's subjective symptom testimony was inconsistent with his activities of daily living. For this reason, the Court concludes that the ALJ did not err in his consideration of Plaintiff's subjective symptom testimony.

In light of this disposition, the Court need not consider the ALJ's remaining reason for rejecting Plaintiff's subjective symptom testimony because any error with respect to that reason would be harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (any subsequent error in analyzing the plaintiff's subjective symptom testimony was harmless because "there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion").

//

**B.      Medical Opinion Evidence**

Alternatively, Plaintiff argues that the ALJ erred in his consideration of the medical opinion of Dr. Norman Seaholm (Dr. Seaholm). Dkt. 10 at 9.

For applications, such as Plaintiff's, filed after March 27, 2017, in evaluating medical opinion evidence, ALJ's "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[1] Rather, ALJ's must consider every medical opinion or prior administrative medical finding in the record and evaluate the persuasiveness of each one using specific factors. *Id.* The critical factors in an ALJ's determination of persuasiveness are the "supportability" and "consistency" of each opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also id.* at § 416.920c(c)(1). A medical opinion is more "supportable," and therefore more persuasive, when the sources provide ample relevant "objective medical evidence and supporting explanations" for their medical opinion. *Id.* "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also id.* at § 416.920c(c)(2).

Critically, an ALJ must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions" when making their decision. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). "Even under the new regulations, an ALJ cannot reject an

---

[1] The regulations regarding the evaluation of medical opinion evidence have been amended for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867–68, 5878–79 (Jan. 18, 2017). Because Plaintiff's application was filed after that date, the new regulations apply. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. Indeed, "[i]f a claimant has submitted evidence of a severe impairment, we analyze an ALJ's step-two denial by asking 'whether the ALJ had substantial evidence to find that the medical evidence clearly establish [the claimant] did not have a medically severe impairment or combination of impairments.'" *Glanden v. Kijakazi*, 86 F.4th 838, 844 (9th Cir. 2023) (citation omitted).

Dr. Seaholm completed an RFC report on June 8, 2024. AR 906. In the report, Dr. Seaholm opined that his primary diagnosis of Plaintiff's condition was "Rare Auto-Immune[,]" but failed to provide more specificity.[2] *Id.* Dr. Seaholm asserted that Plaintiff experienced chronic fatigue and muscle pain on a "daily basis," and had stomach issues that sometimes caused Plaintiff to "spend *the day* in the restroom about 1-3 times a week[.]" AR 907 (emphasis added). Dr. Seaholm opined that Plaintiff "cannot sustain work on a regular basis" but could "work in a 'spurt' of 2 hours on a day but cannot work 2 hours the next day or couple of days due to exhaustion/fatigue." *Id.*

As for functional limitations, Dr. Seaholm opined that Plaintiff could frequently lift zero to five pounds, occasionally lift five to twenty pounds, but could never lift above twenty pounds. AR 909. He expressed that Plaintiff would have "significant limitations in doing repetitive reaching, handling, fingering, or lifting[,]" because "[c]onstant fatigue in the joints, lower hips make it difficult to lift and hurt right shoulder (car accident in June 2020) make[s] it hard to reach." AR 910. Finally, Dr. Seaholm asserted that Plaintiff had "marked"—defined as "essentially precluded"—limitations in grasping, turning, twisting objects; using fingers/hands for fine manipulations; and using arms for reaching. AR 910–11.

---

[2] Dr. Seaholm also noted other diagnoses including sleep apnea, tachycardia, and chronic fatigue syndrome. AR 906.

SOCIAL SECURITY DISABILITY APPEAL ORDER - 8

The ALJ found Dr. Seaholm's opinion was not persuasive. AR 33. In considering supportability, the ALJ found Dr. Seaholm's opinion "fails to include positive clinical findings that support his opinion[,] [i]nstead, he includes generic references to referrals and studies without [providing] any of the conclusive findings." AR 33. Indeed, Dr. Seaholm stated that his opinion was supported by "MRI, Sleep Study, Treadmill, Blood work, Gastroenterologist Biopsy from Esophagus to Colon, [and] Psychiatric Evaluations[,]" but did not elaborate what the results of those tests were, or how they supported his opinion. AR 907.

As to consistency, Dr. Seaholm's opinion, according to the ALJ, was "not consistent with [Plaintiff]'s own reports of his limitations or his own reports of his activities of daily living." AR 33. The ALJ found that Plaintiff "did not allege any limitations related to IBS [irritable bowel syndrome] such as bathroom urgency or frequency of use[,]" and also "reported no problems with using his hands for gross or fine manipulations or with reaching[,] and he stated he could lift 25 pounds." *Id.* Likewise, the ALJ found "medical records are not entirely consistent with Dr. Seaholm's opinion" because "they show ongoing treatment primarily for mild neck, upper back, and low back discomfort . . . with most exams also showing no tenderness, normal joint range of motion, normal strength, normal gait and balance, normal sensation, and normal coordination." *Id.*

As the ALJ found, Plaintiff testified at his hearing that he would use the bathroom "at minimum, four to about, the worst I've ever had is about ten[,]" times per day, and would be in the bathroom "about ten minutes usually. And I think the longest I've ever been was about 20 [minutes]." AR 69. Plaintiff's own September 15, 2021, functional report, cited here by the ALJ, also notes that Plaintiff reported "no problems" when asked how his injuries, illnesses, and conditions affected his ability to "use the toilet." AR 33, 307. This evidence, as the ALJ found, is

SOCIAL SECURITY DISABILITY APPEAL ORDER - 9

not consistent with Dr. Seaholm's opinion that Plaintiff would "spend *the day* in the restroom about 1-3 times a week" due to his IBS. AR 33, 907 (emphasis added).

As for Plaintiff's "problems with his hands for gross or fine manipulations[,]" in his own functional report from September 15, 2021, Plaintiff did not check the box indicating that he experienced challenges "using hands,"[3] AR 311, and elsewhere noted that he "scoop[s] cat [litter] box[,]" and spends time "texting." AR 307. In a subsequent functional report from November 19, 2022, Plaintiff reported that he could lift "max 25 lbs[,]" but again, did not indicate any challenges "using hands." AR 350, 352.

Finally, Plaintiff testified that injuries to his shoulder and neck had "gotten better in some regards . . . the shoulder, neck are a lot better[,]" AR 65, which was inconsistent with Dr. Seaholm's opinion that "hurt right shoulder (car accident in June 2020) make[s] it hard [for Plaintiff] to reach." AR 910. The medical records that the ALJ cites here, from October 27, 2021, note that Plaintiff had "aches and pains [that were] *intermittent*[,]" that Plaintiff's gait and grip strength were normal, and that Plaintiff experienced "[n]o bony tenderness, normal joint range of motion." AR 660, 808–09 (emphasis added).

Based upon these inconsistencies and lack of support, the ALJ reasonably concluded that Dr. Seaholm's medical opinion was not persuasive. AR 33. In sum, the Court concludes that the ALJ did not err in considering Dr. Seaholm's medical opinion; the ALJ considered both the "supportability" and "consistency" of the opinion, and ultimately concluded that the limitations opined by Dr. Seaholm were not persuasive due to their inconsistencies with Plaintiff's own

---

[3] Plaintiff *did* check boxes indicating that his impairments affect his: lifting, squatting, standing, walking, talking, stair climbing, memory, completing tasks, concentration, and following instructions, but notably, *not* "using hands." AR 311.

SOCIAL SECURITY DISABILITY APPEAL ORDER - 10

reports of his limitations and the longitudinal medical record. For this reason, the Court concludes that the ALJ did not err in considering Dr. Seaholm's medical opinion evidence.

### IV.    CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 11th day of May, 2026.

Grady J. Leupold
United States Magistrate Judge